(38 South. 448.)

No. 15,283.

PIPER v. LEVY.*

(Feb. 27, 1905.)

### LEASE—RENEWAL—SURETY.

1. Where a contract of lease renewable "upon the same terms and conditions" is secured by a surety so solid as to leave no room whatever for doubt or risk, the lessee must tender for the renewal a surety equally safe, or practically so. He cannot require the lessor to accept a surety as to whose solidity there may be some doubt.

2. The qualifications of a surety tendered for the renewal of such a lease are to be judged in the light of the facts which the parties had before them at the time they were called upon to accept or reject him, and not in the light of facts subsequently developed on a trial in a court of justice.

3. Where the lessee, whose right to renew depends upon furnishing a good surety, has announced his inability to furnish any other than

*Rehearing denied April 10, 1905.

one which the lessor was justified in declining to accept, the lessor is released from his obligation to renew, and is at liberty to lease to another tenant.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Louis F. Piper against Leopold Levy. Judgment for plaintiff, and defendant appeals. Reversed.

William Stirling Parkerson and Bernard Bruenn, for appellant. Branch Knox Miller, for appellee.

PROVOSTY, J. Plaintiff sues for profits which he says he would have realized under a lease which he had a right to renew, and which he claims defendant wrongfully refused to renew. There are several questions discussed in the case, but we need consider only one, since it is determinative of the case, and is clearly settled by the evidence.

Defendant was willing to renew the lease, and would have done so had plaintiff furnished a good surety, as under the agreement he was bound to do. Plaintiff offered one Moore, but, Moore proving unsatisfactory to defendant, plaintiff declared he was unable to furnish any other, and, after waiting a reasonable time on plaintiff, defendant leased the premises to some one else. Without protest plaintiff surrendered the premises to the new lessee. Later he brought this suit.

The case turns upon whether defendant was at fault for not accepting Moore. The facts are as follows:

The lease was for a billiard hall and appurtenances, the latter consisting of $5,000 worth of movables, as per inventory. The term was 11½ months, beginning October 15, 1901, and ending September 30, 1902. The fulfillment of the obligations of the lease was secured by a good surety. The lessee had the privilege of renewing for another year upon

the same terms and conditions, on giving notice before July 1, 1902.

Plaintiff notified defendant of his intention to renew, and the agents of defendant, Messrs. Stroudback & Stern, on June 21, 1902, wrote to plaintiff requesting him to let them know who his surety would be. Not hearing from plaintiff, the agents, four days afterwards, on June 24, 1902, wrote again to the same effect, warning plaintiff that unless he was heard from within two days the property would be advertised for lease.

Plaintiff testifies that upon receiving this letter he called at the office of the agents, and offered them W. Moore as surety, referring them to Mr. Dreyfous for information as to Mr. Moore's qualifications as a surety; that later he saw the agents again, who said Dreyfous had recommended the surety, and they were satisfied with him; that he then saw Mr. Levy, and informed him of the acceptance of Moore by the agents, and that Levy announced himself satisfied with whatever the agents would do; that this was the situation when, on June 30, 1902, he received from the defendant's agents the following letter:

"Kindly call with Mr. Moore to sign the lease and notes at once"; and that an hour or two thereafter he received from them the following letter:

"A few days ago you informed our Mr. Stern of your surety, Mr. Moore, and that Mr. Levy was satisfied to accept him. We have seen Mr. Levy for the first time to-day, and he is not satisfied with him as surety, and unless you call at once, and give us some one that is satisfactory to Mr. Levy, we will be compelled to advertise the property for sale and for rent."

Plaintiff testifies that after receiving the first of these two letters, and before receiving the second, he saw the defendant Levy, and "I told him that I had offered Mr. Moore to Mr. Stern as security, and he said he was satisfied."

Mr. Stern, who attended to the matter of

this lease for the firm, testifies that plaintiff referred him to Mr. Dreyfous for information regarding Mr. Moore, and that Mr. Dreyfous said he believed Moore had a few cabs and owned a couple of pieces of property, but that he could not recommend him as a surety on the lease; that Mr. Levy was out of town at the time this information was given; that later plaintiff called, and said that Mr. Levy was satisfied with Mr. Moore as surety; and that he (the witness) knowing plaintiff pretty well, accepted the statement, and accordingly wrote the letter of June 30th, telling plaintiff to call with Moore to sign the lease; but that, having seen Mr. Levy, and the latter informing him that he was not satisfied with Mr. Moore, he wrote the second letter of the same date.

The defendant Levy testifies that plaintiff came to him and offered Moore as a surety.

"I asked him, 'Who is Mr. Moore?' and he told me it is his father-in-law. I told him, 'Well, is he a responsible party?' and he told me he was. I told him, 'Well, I have to see Mr. Stern about that. If Mr. Stern thinks he is responsible—if Mr. Stern knows he is responsible—why, then there will be no objections.'"

Plaintiff testifies that upon receiving the second letter of June 30, 1902, he called to see Stroudback & Stern, and that they informed him that they were not satisfied with Mr. Moore.

Stern testifies that he (Stern) suggested to plaintiff that he have Mr. Macheca sign as surety, who had been the surety on the original lease, and that plaintiff said that Macheca would do it; but that he, Stern, after having waited for Macheca to come, called upon him, and Macheca refused positively to sign.

On July 10, 1902, Stroudback & Stern wrote to plaintiff: "Please call at our office at once and oblige." On the next day—the 11th—they wrote him:

"Have repeatedly sent for you to get your answer as to what security you would furnish satisfactory to Mr. Levy, but as we have not heard from you, we take it for granted you do not want to renew, and we therefore beg to say that we are now at liberty to advertise said Billiard Room for rent or for sale."

Plaintiff testifies that on receipt of this last letter he called on Mr. Stern.

"I told him I was not able to get anybody else as security except Mr. Moore; that he was satisfactory at one time. I thought he was sufficient. * * * Mr. Stern in reply insisted upon having Mr. Macheca to sign my lease. I told him I didn't ask Mr. Macheca, nor could I ask Mr. Macheca any such favor as that."

Thereafter the plaintiff does not seem to have made any effort towards renewing the lease.

On July 15, 1902, Stroudback & Stern wrote him the following letter:

"As you did not call at our office yesterday, as you agreed, with Mr. Macheca, for surety, we have rented the portion of building adjoining Billiard Room for club room purpose. If you desire portion of Billiard Room and contents we will rent you the same for $75.00, and will accept Mr. Moore as surety."

Finally, on August 16, 1902, Stroudback & Stern wrote plaintiff the following letter:

"You having failed to comply with agreement entered into between yourself and Mr. Leopold Levy, he has instructed us, his agents, to notify you that he will not renew lease from October 1st, 1903, next, and you will kindly let this be your final notice to vacate at said time."

Nothing further seems to have been done or said until the expiration of the lease on October 1, 1903, when, as already stated, an inventory was made of the movables on the premises, and plaintiff surrendered the possesssion to the new lessee without protest.

On the trial of the case proof was offered of the sufficiency of Mr. Moore as a surety, and while he would not probably have been as solid a surety as Macheca, who was the surety on the original lease, would have been, yet it must be conceded that he would have made a reasonably safe surety. But the conduct of the parties must be read in the light of the information they had at the time they acted, and not in the light of evidence taken afterwards on a trial in a court of justice; and, again, the condition of the

right to renew was that the renewal should be on the same terms and conditions, and this meant that a perfectly safe surety, such as Macheca had been, should be furnished. Under this agreement the defendant was not bound to accept any surety except one entirely safe, and it is not so certain, even under the proof as now made, that Moore measures up to that. requirement, although he does possess the qualifications of a mere legal or judicial surety. Plaintiff referred defendant to Dreyfous, and Dreyfous made an unfavorable report. Defendant sought information from Bradstreet, and could get none. Under these circumstances the refusal to accept Moore was, in our opinion, justified; and, plaintiff having declared that he could furnish no other, the leasing to another tenant was, in our opinion, justified.

Nor is it so clear that plaintiff did not acquiesce in the situation, and that the bringing of this suit was not an afterthought. His making the inventory and surrendering possession of the premises, without protest, goes far towards putting that aspect upon his conduct.

The judgment appealed from is set aside, and the suit is dismissed, with costs in both courts.